JUSTICE LEAPHART
dissenting.
¶27 I dissent.
¶28 As the Court notes, a claimant must satisfy four elements in order to establish a prima facie case of hostile environment sexual harassment: (1) the plaintiff must be a member of a protected class (male or female); (2) the plaintiff must show that the offensive conduct *442 amounted to actual discrimination because of sex and that the motivation behind the discrimination was clearly based on the plaintiffs sex; (3) the plaintiff must show that the harassment was unwelcome; and (4) the plaintiff must show that the claimed sexual harassment was so severe or pervasive that it altered the conditions of his employment and created an abusive working environment.
¶29 The Court determines that Campbell’s claim must fail because he failed to establish element number two-discriminatory motive. This Court affirms the District Court which in turn affirmed the hearing examiner’s finding that Campbell failed to prove that his harassers were hostile towards men in general or were acting out sexual desires toward him. Campbell correctly points out that he should not have been required to prove sexual desire in the first place. Oncale, 523 U.S. at 80, 118 S.Ct. at 1002, 140 L.Ed.2d at 208. Although sexual desire is not a required element of a sexual harassment case, proof of sexual desire is one way that a claimant can prove his employer discriminated against him based on sex. Oncale, 523 U.S. at 80-81, 118 S.Ct. at 1002, 140 L.Ed.2d at 208 (plaintiff may prove discrimination by “[w]hatever evidentiary route the plaintiff chooses to follow”). Here, Campbell proved that his harassers were motivated by self-declared sexual desire and sexual stereotyping.
¶30 The Court acknowledges that the co-workers may not have made the vulgar comments to Campbell if he were not a man. Nonetheless, the Court feels it should not stretch the law of sexual harassment so far that it becomes merely a code of “general civility.” Citing Oncale, 523 U.S. at 81, 118 S.Ct. at 1003, 140 L.Ed.2d at 208, it cautions that we should not “mistake ordinary socializing in the workplace-such as male-on-male horseplay or intersexual flirtation-for discriminatory ‘conditions of employment.’ ”
¶31 In the context of the present case, I seriously question whether this deferential, permissive approach is called for. To illustrate my point, I refer to a few of the less sordid examples in the record: Campbell’s foreman, a 225-pound man, told Campbell that “he was going to have sex with his wife this morning but he thought he would wait until he got to work to have sex with me [Campbell] because he likes it better.” He repeatedly told Campbell that he was going to “butt fuck” him. Campbell testified that there was one incident in which Campbell was standing in the ditch digging and his foreman came up, straddled the ditch and motioned toward his crotch saying Campbell was the “perfect height” for giving him pleasure. Given that there are numerous more graphic instances of sexually explicit harassment in *443 the record, I am at a loss as to how the hearing examiner could conclude that this did not amount to “acting out sexual desires” towards Campbell.
¶32 Being of the male persuasion, I can safely say that there is no danger that such threats will be mistaken for “ordinary socializing in the workplace” nor as male-on-male “horseplay” or “same sex roughhousing.” If some 225-pound depraved male threatens a 120-pound male with nonconsensual anal intercourse, no further proof of “motive” is needed; the “motive” is apparent. The law does not require Campbell to hire a psychologist to analyze his co-workers and supervisors to ascertain whether they desired sex with Campbell. When the record shows Campbell’s co-workers and supervisor saying they wanted to have anal intercourse with Campbell, the Court can take them at their word. If statements like this do not suffice to prove discrimination based on sex, one wonders what quantum of proof is needed; must a plaintiff show actual physical contact amounting to criminal assault or sexual intercourse without consent? If so, that is hardly good public policy.
¶33 There is no question but that Campbell was subjected to this base and degrading conduct because he is male. A reasonable person would find this conduct severely hostile or abusive. To say that Campbell established a prima facie case of hostile environment sexual harassment would be a gross understatement.
¶34 I would reverse the decision of the District Court.
JUSTICE NELSON joins in the dissent of JUSTICE LEAPHART.